977 P.2d 574 (1999)
138 Wash.2d 55
Richard PUDMAROFF, a single man, Respondent,
v.
Leona ALLEN and John Doe Allen, wife and husband, and the marital community composed thereof, Petitioners.
No. 66769-1.
Supreme Court of Washington, En Banc.
Argued March 24, 1999.
Decided June 3, 1999.
*575 Mark T. Fordham, David Shelton, Bricklin & Gendler, Michael W. Gendler, Seattle, amicus curiae on behalf of Bicycle Alliance of Washington.
Reed, McClure, William R. Hickman, Danielle A. Hess, Seattle, for Petitioners.
David R. Hallowell, Maltman, Reed, North, Ahrens & Malnati, Douglas Ahrens, Seattle, for Respondent.
TALMADGE, J.
We are asked in this case to determine if a bicyclist is entitled to the protection of the crosswalk when crossing a roadway. We hold a bicyclist using a crosswalk to cross a roadway is entitled to the protection of law afforded persons using crosswalks. The trial court here properly granted summary judgment on liability to the bicyclist and exonerated the bicyclist from comparative fault on these facts. We affirm the trial court's judgment on the verdict of the jury and award fees on appeal to the bicyclist.

ISSUES
1. Do the protections of a crosswalk extend to a bicyclist using the crosswalk to traverse the roadway?
2. Was the vehicle driver who struck the bicyclist in the crosswalk correctly found 100 percent liable as a matter of law?
3. Should the respondent bicyclist be awarded attorney fees on appeal pursuant to RAP 18.1?

FACTS
On September 6, 1994, at approximately 4:30 p.m., Leona Allen was driving her Blazer sports utility vehicle east along Southeast 277th Street, a two-lane, two-way roadway in the city of Kent, Washington. Richard Pudmaroff was riding his bicycle on the north-south multiuse Interurban Trail in the same city. Where the Interurban Trail crosses 277th Street, there is a marked crosswalk, designated by both a series of white parallel stripes painted on the pavement and a standard crosswalk sign (a yellow diamond C-shaped sign depicting a person walking) on the right-hand side of 277th Street approaching the crosswalk from the west. Railroad tracks also cross 277th Street on the east side of the crosswalk, so traveling from the west, an automobile first comes to the crosswalk sign, then to the crosswalk itself, and then to the railroad tracks. Allen, heading *576 east on 277th, approached the crosswalk from the west.
As Pudmaroff was riding his bicycle southbound on the Interurban Trail, he encountered a stop sign before he came to the crosswalk on 277th. Pudmaroff stopped and dismounted from his bicycle at the edge of the roadway in front of the crosswalk, looked, and waited for traffic. A car on his left in the westbound lane stopped and allowed him to proceed across 277th. He remounted his bike, looked to the right, and started across. He saw only one vehicle, not near, but a good distance away.
Allen claims she was proceeding no faster than the posted speed limit of 35 miles per hour before she got to the crosswalk. Nearing the crosswalk, she began slowing for the railroad tracks on the far side of the crosswalk. A westbound car allegedly obscured Allen's view of Pudmaroff as he entered the crosswalk. Allen did not see Pudmaroff until he was two feet north of the center of the two-lane road. As soon as Allen saw Pudmaroff, she slammed on her brakes, leaving skid marks for more than 30 feet, and veered across the fog line marked on the right of the roadway. When the right front corner of Allen's Blazer struck the rear tire of Pudmaroff's bicycle, throwing him from the bicycle causing injuries, Pudmaroff was across the fog line and off the traveled portion of the roadway.
When settlement negotiations with Allen did not come to fruition, Pudmaroff filed suit on April 15, 1995. The case was assigned to mandatory arbitration, and an arbitrator found for Pudmaroff, awarding him $17,000 in damages. Thereafter, Pudmaroff declined a new settlement offer of $12,000 from Allen, and Allen filed for a trial de novo in superior court as permitted by MAR 7.1. Subsequently, both parties filed for summary judgment on the issue of liability. The trial court granted Pudmaroff's motion, finding Allen negligent as a matter of law and finding no evidence supporting Allen's contention of Pudmaroff's comparative negligence. Trial was held on damages only, and a jury awarded Pudmaroff $40,918, plus attorney fees. MAR 7.3. Allen appealed, and the Court of Appeals, Division One, affirmed the trial court's judgment. Pudmaroff v. Allen, 89 Wash.App. 928, 951 P.2d 335 (1998). Allen then sought discretionary review, which we granted.

ANALYSIS
A. Bicyclists Are Entitled to Crosswalk Protection
To resolve the issues in this case, we must decide how to interpret the provisions of RCW 46.61.235(1) regarding the treatment of persons in crosswalks and RCW 46.04.400 defining pedestrians under Washington law. Allen contends the Court of Appeals and the trial court failed to apply the plain meaning of these statutes. Allen asserts motorists need only stop for pedestrians in crosswalks and that bicyclists are not pedestrians. Washington law now provides that "[t]he operator of an approaching vehicle shall stop and remain stopped to allow a pedestrian to cross the roadway within an unmarked or marked crosswalk[.]" RCW 46.61.235(1) (emphasis added). A "pedestrian" is defined as "any person who is afoot or who is using a wheelchair or a means of conveyance propelled by human power other than a bicycle." RCW 46.04.400 (emphasis added). And as Allen observes, RCW 46.61.755 gives "[e]very person riding a bicycle upon a roadway" the rights and duties of "the driver of a vehicle[.]" Thus, in Allen's view, Pudmaroff was not a pedestrian but, in effect, a motorist at the time of the accident. As such, he was the disfavored driver at the intersection and should have remained at the stop sign until the traffic on 277th Street had cleared.
In an earlier case, Crawford v. Miller, 18 Wash.App. 151, 566 P.2d 1264 (1977), the Court of Appeals held a bicyclist, although not a pedestrian under Washington law, was entitled to the protection of a crosswalk as if a pedestrian. There, a truck was stopped in the outside northbound lane at an intersection. From the truck's right, Crawford stepped into an unmarked crosswalk, pushing her bicycle. In the middle of the lane, she mounted the bike and proceeded to ride across the street. She was struck by a vehicle that had moved into the inside northbound lane to pass the stopped truck. The *577 Crawford court held RCW 46.61.755 did not apply to Crawford when she was in the crosswalk, because the statute pertained to a bicyclist "upon a roadway." Id. at 153, 566 P.2d 1264. The court reasoned a bicyclist within a crosswalk was not a motorist on a roadway. The court found it irrelevant that Crawford had mounted her bike and ridden it over the crosswalk. At the time Crawford was decided, RCW 46.61.235(1) provided substantively the same protections as the statute now offers. Former RCW 46.61.235(1) provided a vehicle driver shall yield the right of way to a pedestrian crossing the roadway within a crosswalk. See Laws of 1965, Ex.Sess., ch. 155, § 34. But the definition of "pedestrian" in RCW 46.04.400 was confined to persons "afoot." Thus, Crawford was not a pedestrian within the meaning of RCW 46.61.235(1) at the time the case was decided. Although Crawford was not a pedestrian at the time she was in the crosswalk, the Court of Appeals essentially created a judicial rule that she and other bicyclists would be treated in a fashion akin to pedestrians when in crosswalks.
The Legislature amended RCW 46.04.400 (defining pedestrian) and 46.04.670 (defining vehicle) in 1990 and 1991, respectively. As the Court of Appeals put it, "[t]he question... is whether the Legislature's amendment of these two definitions indicates the Legislature intended to change the Crawford rule, and treat a bicyclist in a crosswalk the same as a bicyclist on any other portion of the roadwaythat is, entitled to none of the usual protections of the crosswalk." Pudmaroff, 89 Wash.App. at 933, 951 P.2d 335. The Court of Appeals reasoned as follows:
the Legislature made no change to the principal statute construed in Crawford, RCW 46.61.755. We note also that the expansion of the definition of pedestrians to include human-powered conveyances "other than bicycles" does not indicate a legislative intent to change the law as to bicycles; bicyclists were not within the definition of pedestrian before the amendment. Nor does amendment of the "vehicle" definition to include bicycles change the rights and duties of bicyclists. Since 1965, RCW 46.61.755 has subjected bicyclists using a roadway to the rights and duties of vehicle drivers. But bicyclists are widely permitted to travel on sidewalks, and presumably must use crosswalks at intersections. Obviously here, the marked crosswalk was intended for users of the bike trial. The rules of the road cannot logically apply in crosswalks, nor does it make sense to permit use of a crosswalk by bicyclists and yet require them to yield to motorists as if in a vehicle.
Pudmaroff, 89 Wash.App. at 933-34, 951 P.2d 335 (footnote omitted).
Allen makes the same argument to us she made to the Court of Appeals. First, she contends, because bicycles operating on roadways or bike paths under RCW 46.61.750(2) and .755 are subject to the rules of the road, Pudmaroff failed to comply with RCW 46.61.190(2) which requires a vehicle approaching a stop sign at an intersection of roadways to yield the right of way to approaching traffic. Second, the Legislature's amendment of RCW 46.04.400 in 1990 to exclude bicycles from the definition of pedestrian makes the protections afforded pedestrians in crosswalks by RCW 46.61.235 unavailable to bicyclists, and Crawford is no longer good law. We believe neither argument carries the day for Allen.
In support of her first argument, Allen cites Zahn v. Arbelo, 72 Wash.2d 636, 637, 434 P.2d 570 (1967), for the proposition that "[t]he favored driver on an arterial protected by a stop sign has one of the strongest rights of way which the law allows." Supplemental Br. of Appellant at 7. While such proposition is true, it is also irrelevant here. Zahn is inapposite because it does not involve a crosswalk, and instead addresses the relative rights and duties of two vehicles meeting at an intersection of two roadways with one stop sign. Similarly, Allen's reliance on RCW 46.61.190(2) is misplaced as that statute addresses the duties of a vehicle driver approaching a stop sign at the intersection of two roadways.[1]
*578 The case at hand does not involve the intersection of two roadways. The Interurban Trail at issue is an improved multiuse path which may be utilized by pedestrians (i.e., walkers, joggers, roller bladers, wheelchairs, parents pushing baby strollers, etc.), as well as bicyclists, and therefore does not qualify as a roadway. See RCW 46.04.500 (defining "roadway" as that portion of a highway improved, designed, or ordinarily used for vehicular travel).[2] Nor does RCW 46.61.190(2) address the rights and duties of particular types of vehicles that can validly use a crosswalk (presumably since bicycles may use sidewalks, they may also use crosswalks). The statute is simply irrelevant here.
When bicycles are operated on roadways, they are subject to the rules of the road. RCW 46.61.755. Moreover, if bicycles are operated on a bicycle path, they may be subject to the rules of the road, but it is not clear if this relates to bicycle lanes on roadways or bicycle paths separate from roadways or multipurpose trails. See RCW 46.61.750(2). Finally, RCW 46.61.755 exempts bicycles from the rules of the road "as to those provisions of this chapter which by their nature can have no application."
We hold RCW 46.61.190(2) and Zahn do not apply here because Allen cannot point to a specific statute treating a multiuse trail, as is present here, as a roadway;[3] and, more importantly, the accident occurred not on a roadway or a bicycle path, but in a crosswalk, to which special rules apply.
Allen's second argument is that Crawford is no longer good law because the definition of pedestrian has changed. Allen's primary point is that RCW 46.04.400, as currently amended, now specifically excludes bicycles from the definition of pedestrian; and, had the Crawford court been faced with such definition, it would not have afforded the crosswalk protections of RCW 46.61.235 to bicyclists. However, the Crawford decision did not turn on the definition of pedestrian, but on the Court of Appeals' belief that RCW 46.61.755, which required bicycles operated on roadways to follow the rules of the road, *579 does not apply to bicycles using crosswalks. Crawford, 18 Wash.App. at 152-53, 566 P.2d 1264. In any event, the 1990 amendment of RCW 46.04.400 did not substantively alter that statute's treatment of bicycles, as they were not included prior to the amendment. See RCW 46.04.400 (1976) (defining pedestrian as "any person afoot").
The Legislature is presumed to be familiar with judicial interpretations of statutes, and absent an indication it intended to overrule a particular interpretation, amendments are presumed to be consistent with previous judicial decisions. See, e.g., In re Marriage of Williams, 115 Wash.2d 202, 208, 796 P.2d 421 (1990). There is no indication from the legislative history of the 1990 and 1991 amendments in question that the Legislature intended to amend or repeal the 1977 holding in Crawford. The Legislature, in fact, broadened the protection of the crosswalk statute by expanding the definition of pedestrian to include wheelchairs and certain other wheeled devices. Laws of 1990, ch. 241, § 1. Additionally, the statutory protection for crosswalk users was strengthened when vehicles were required to stop, rather than merely yield, to crosswalk users. Laws of 1990, ch. 241, § 4. No mention is made anywhere in the legislative history of these amendments that the Legislature intended changes to the Crawford rule.
Moreover, we do not give a hypertechnical reading of a statute so as to yield an absurd result. Duke v. Boyd, 133 Wash.2d 80, 87, 942 P.2d 351 (1997); Wright v. Engum, 124 Wash.2d 343, 351-52, 878 P.2d 1198 (1994). Allen's position, that crosswalk protections do not extend to persons riding bicycles,[4] puts every child in Washington riding a bicycle and using a crosswalk at risk. Such result is clearly contrary to the declared purpose of our State's traffic laws and regulations to encourage and enhance highway safety. See, e.g., RCW 46.90.005 and WAC 308-330-005 (both authorizing DOL to adopt a compilation of uniform traffic laws to "encourage highway safety" and "enhance safe and efficient movement of traffic").[5]
Equally absurd would be practical application of Allen's proposed interpretation. A hypothetical suggests the problem: Several groups of children return home from school by the Interurban Trail, some on foot, others on skateboards, roller blades and bicycles, and wait at the crosswalk for a clear opportunity to cross 277th Street, and, like Pudmaroff, they proceed only after traffic has stopped for them and after they have properly checked for oncoming traffic. If such group were hit in the crosswalk, under Allen's interpretation, the vehicle driver would be liable to all children except those on bicycles. Such interpretation and result make no sense. We believe Crawford remains good law in Washington.
B. Summary Judgment Was Proper
Allen also argues summary judgment on the issue of her liability was improper because genuine issues of fact exist regarding whether Pudmaroff exercised reasonable care in crossing the road, asserting reasonable prudence required Pudmaroff to look and to wait until the oncoming vehicle came to a full stop. Supplemental Br. of Appellant at 12-13. Allen argues that Bordynoski v. *580 Bergner, 97 Wash.2d 335, 644 P.2d 1173 (1982), and RCW 5.40.050 require the issue of her negligence and Pudmaroff's comparative negligence be decided by a jury. Supplemental Br. of Appellant at 13-15. Regarding whether the issue of comparative negligence should have been submitted to the jury, the Court of Appeals noted as follows:
Summary judgment was proper only if the evidence did not support an inference that Pudmaroff unsafely entered the crosswalk or continued crossing after being alerted that Allen was not going to yield.
The undisputed evidence here is that Pudmaroff stopped at the intersection and waited to proceed. The fact that a westbound vehicle stopped and waited for him indicates he did not dart into the intersection. Allen was slowing down for the nearby train tracks, giving Pudmaroff reason to believe she would yield. Crosswalk yield signs faced Allen's lane of travel. Allen's testimony that her vision was obscured provides her no legal excuse because the duty of continuous observation is imposed upon her. Thus, there was no evidence of comparative negligence. Summary judgment on liability was appropriate.
Pudmaroff v. Allen, No. 38800-2-I, 89 Wash. App. 928, 951 P.2d 335 (Wash.Ct.App. Feb.17, 1998) (unpublished portion slip op. at 8-9) (footnotes containing citations omitted).
The Court of Appeals is correct. As the driver of a vehicle approaching a crosswalk, Allen had a duty of continuous observation. Shasky v. Burden, 78 Wash.2d 193, 200, 470 P.2d 544 (1970); Jung v. York, 75 Wash.2d 195, 198, 449 P.2d 409 (1969); Oberlander v. Cox, 75 Wash.2d 189, 192, 449 P.2d 388 (1969). Although Pudmaroff still had a duty to exercise reasonable care for his own safety, see Alston v. Blythe, 88 Wash. App. 26, 39, 943 P.2d 692 (1997), the facts as above stated indicate he did all that was required of a reasonable person utilizing a crosswalk.
Nothing in Bordynoski or RCW 5.40.050 indicates a different result. In Bordynoski, we held the trial court erred in finding a bike rider injured on a roadway by a following car contributorially negligent and such negligence was proximate cause of the accident as a matter of law. Noting disputed facts, we held such determinations were usually for the jury and could be made as a matter of law only where reasonable minds could not differ in their interpretation of the factual pattern. Disputed facts such as whether the following motorist honked his horn as a warning, the speed of the following car, and whether the injured bike rider was aware of the car's presence made the trial court's determination as a matter of law inappropriate. Bordynoski, 97 Wash.2d at 338-41, 644 P.2d 1173. As noted above, such disputed facts are not present in this case. See Yurkovich v. Rose, 68 Wash.App. 643, 653, 847 P.2d 925 (noting Bordynoski does not preclude a directed verdict as to defendants' negligence where it is clear defendants breached the standard of the duty of care owed to the injured plaintiff and offered no admissible evidence to justify or excuse such breach), review denied, 121 Wash.2d 1029, 856 P.2d 382 (1993).
Likewise, RCW 5.40.050 does not require a different result. RCW 5.40.050 provides, subject to exceptions not pertinent here, that "[a] breach of a duty imposed by statute ... shall not be considered negligence per se, but may be considered by the trier of fact as evidence of negligence...." Although violation of a statute/duty is no longer negligence per se under RCW 5.40.050, this does not mean RCW 5.40.050 necessarily bars a trial court from finding negligence as a matter of law. As stated in Yurkovich,
We do not interpret RCW 5.40.050 as meaning that a trial court cannot under any circumstances find negligence as a matter of law where violations of statutes, ordinances, or administrative rules are involved....
....
... RCW 5.40.050 permits a defendant shown to have violated the literal requirements of a statute, ordinance, or administrative rule to present evidence of excuse or justification and leaves it to the trier of fact to determine whether the violation should be treated as evidence of negligence.

*581 The defendants' efforts at showing excuse or justification failed in this case. This left the trial court no choice but to rule that negligence had been established as a matter of law.
Yurkovich, 68 Wash.App. at 653-54, 847 P.2d 925. See also Mathis v. Ammons, 84 Wash. App. 411, 418-19, 928 P.2d 431 (1996), review denied, 132 Wash.2d 1008, 940 P.2d 653 (1997), interpreting RCW 5.40.050 and holding:
If all reasonable minds would conclude that the defendant failed to exercise ordinary care, the judge can find negligence as a matter of law. If no reasonable mind could find that the defendant failed to exercise ordinary care, the judge can find the absence of negligence as a matter of law. In any other case, negligence is an issue for the trier of fact, even when the defendant breached a duty imposed by statute.
(Footnotes omitted.)
As in Yurkovich, Allen clearly breached her duty of care to the crosswalk user, and as indicated above, there is no indication Pudmaroff acted unreasonably in his use of the crosswalk. The trial court's grant of summary judgment on liability to Pudmaroff was proper. See Jung, 75 Wash.2d at 198, 449 P.2d 409 (injured plaintiff was in marked crosswalk, and there was no evidence she was running or otherwise proceeding without due caution; court held pedestrian in crosswalk has right to assume operators of approaching vehicles will yield the right of way "until [pedestrian] knows or should know to the contrary").[6]
C. Attorney Fees
In a separate section of his brief, Pudmaroff requests attorney fees under MAR 7.3 and RAP 18.1(j). Supplemental Br. of Resp't at 19; see also RAP 18.1(b). The trial court and Court of Appeals awarded him fees under MAR 7.3 because Allen did not improve her position with respect to the arbitration award. For the same reason, we award Pudmaroff attorney fees here. MAR 7.3; RAP 18.1(a).

CONCLUSION
Although our State's laws on bicycles and traffic safety do not present a picture of clarity, we do not believe the Legislature's 1990 and 1991 amendments to the laws pertaining to pedestrians, crosswalks and bicycles evidenced an intent to overrule Crawford. We continue to adhere to the rule that bicyclists, though not pedestrians, are to be treated akin to pedestrians when they use crosswalks to traverse a roadway in the same manner as a pedestrian.
The trial court here property granted summary judgment to Pudmaroff, finding Allen at fault and Pudmaroff free of any comparative fault. The Court of Appeals correctly affirmed the judgment on the verdict of the jury. We award attorney fees to Pudmaroff for proceedings before this Court.
GUY, C.J., and DURHAM, SMITH, JOHNSON, MADSEN, ALEXANDER, SANDERS and IRELAND, JJ., concur.
NOTES
[1] RCW 47.30.060 states in part "[t]he department [of transportation] shall provide a uniform system of signing paths and trails which shall apply to paths and trails under the jurisdiction of the department and of cities, towns, and counties." Although WAC 308-330-545(1) requires persons operating bicycles to "obey the instructions of official traffic control devices applicable to vehicles", WAC 308-330-030 directs "[t]he provisions of this chapter relating to the operation of vehicles shall be applicable and uniform upon all persons operating vehicles upon the public highways of this state, except as otherwise specifically provided." (Emphasis added.) Thus, the directive of WAC 308-330-545 appears to be limited to bicycles when used upon public highways. Allen makes no reference to a rule regarding the placement or effect of stop signs on multiuse trails.
[2] Likewise, Crawford held "[a] crosswalk is not a roadway[,]" and concluded RCW 46.61.755, subjecting bicycles operated "in a `roadway,'" to the rules of the road, simply did not apply to bicycles using a crosswalk to traverse a highway. 18 Wash.App. at 153, 566 P.2d 1264.
[3] Bicyclists enjoy an anomalous place in the traffic safety laws of Washington. Bicyclists are generally not pedestrians. RCW 46.04.400, 47.04.010(22). Nor are bicycles always considered vehicles; see RCW 46.04.670, 47.04.010(40). For example, bicycles may be operated on both sidewalks and roadways. WAC 308-330-555(2). Unfortunately, the Legislature has not clarified the status of bicycles under Washington's traffic safety laws.

Statutes variously treat bicycles and bike paths in a recreational context, and at other times the statutes treat them as part of the transportation system. Cf. RCW 46.04.670 (both including and excluding bicycles in its definition of vehicle), 47.04.010(40) (defining "vehicle" in a manner which would exclude bicycles), 47.06.100 (noting bicycle and pedestrian pathways are to be integrated with other transportation modes into a statewide multimodal transportation plan). See also RCW 47.30.005 (defining "trail" or "path" as "a public way constructed primarily for and open to pedestrians, equestrians, or bicyclists, or any combination thereof, other than a sidewalk..."); 47.30.010(2) (providing "[w]here a highway other than a limited access highway crosses a recreational trail of substantial usage for pedestrians, equestrians, or bicyclists, signing sufficient to insure safety shall be provided"); and 36.69.010 (authorizing the formation of park and recreation districts for the purpose of providing leisure time activities and recreational facilities as a public service, and defining recreational facilities to include bicycle paths); 47.30.070 (deeming bicycle, equestrian or pedestrian paths as public highways for purposes of 43 U.S.C. § 912, and thereby saving them from reversion under the federal statute addressing reversion of abandoned railroad rights of way). These statutes indicate the Legislature has viewed bicycles and paths on a case by case basis, and without any continuity. Plainly, the Legislature could usefully consider and clarify the State's traffic safety policy for bicycles and bicycle paths.
[4] In Allen's view, the crosswalk protections do apply to persons walking their bicycles through the crosswalk. Supplemental Br. of Pet'r Allen at 11.
[5] We can take judicial notice of a recent Research Memorandum (Feb.1999) of the Traffic Research & Data Center of the Washington Traffic Safety Commission. ER 201. The Memorandum indicates bicyclist injuries in crosswalks are a serious safety issue in Washington:

The Traffic Research & Data Center recently investigated the problem of cyclists involved in collisions while in crosswalks and analyzed data for 1994, 1995, and 1996 (the most recent years for which comprehensive data are available). We found that in the three-year period 585 cyclists had been hit by motorists while inside a crosswalkan average of 195 people each year. Cyclists accounted for 28% of all 2,097 persons hit by motor vehicles while in crosswalks. Two hundred fifty-eight of the victims 44%were children younger than 15 years of age. Twenty-one of these young cyclists 8%suffered disabling injuries or death as the result of a crash. Out of 258 child cyclists hit in Washington's crosswalks between 1994 and 1996, over 98% were injured as a result of their crashes.
Bicycles in crosswalks present a clear safety issue in our State.
[6] In the following cases, sufficient evidence existed to put the issue of contributory or comparative negligence before the jury. Shasky, 78 Wash.2d at 197-200, 470 P.2d 544 (evidence indicating pedestrian did not exercise due care included crossing against traffic signal and making no attempt to see if any vehicles were approaching crosswalk on a dark, rainy night); Oberlander, 75 Wash.2d at 190 and 193-94, 449 P.2d 388 (pedestrian's failure to continue to look for oncoming traffic after leaving curb, while crossing four-lane road on winter night in driving rain making visibility poor, was sufficient evidence to submit issue of contributory negligence to jury); Clements v. Blue Cross of Wash. & Alaska, Inc., 37 Wash.App. 544, 682 P.2d 942 (error to direct verdict on liability where evidence indicated injured pedestrian did not look for oncoming traffic), review denied, 102 Wash.2d 1016 (1984); Alston v. Blythe, 88 Wash.App. 26, 39-40, 943 P.2d 692 (1997) (distinguishing its facts from Jung noting evidence, if believed, indicating the injured pedestrian ran into driver's lane from in front of stopped truck and into the left side of driver's car, and thus failed to exercise ordinary care for her own safety). No such facts are present in this case.